OPINION OF THE COURT
Jeffrey M. Atlas, J.
Counsel for the defendant moved to collect fees from the plaintiff pursuant to Domestic Relations Law § 237. Since the *161 claim was contested by both the plaintiff and the defendant, a hearing on the matter was held.
Testimony at the hearing revealed that in August 1995 the defendant retained Roy A. McKenzie to represent her in this matrimonial action. The defendant and counsel entered into a written retainer agreement, which, in its entirety, stated "By signing below, you agree to retain me to represent you in a New York State Supreme Court divorce action entitled Christopher Flanagan v. Angela Flanagan, Index No. 313990/ 93. My fee shall be $250.00 per hour. All expenses will be payable by you on a monthly basis. I will submit to you a monthly bill of all expenditures, including fees and expenses. I look forward to working with you.” This agreement, signed by both the defendant and Mr. McKenzie, did not call for the payment of a retaining fee and none was paid. Thereafter, McKenzie undertook, at defendant’s insistence, to deal with the defendant’s legitimate concerns about maintenance and custody. Despite claims by the parties to the contrary, Mr. McKenzie did a substantial amount of work on behalf of the defendant and achieved some successful results. While plaintiff claims that McKenzie took advantage of the defendant at a time when she was emotionally upset and vulnerable, the evidence reveals that, in fact, Mr. McKenzie was sought out by the defendant at a time when she truly needed counsel to help her counteract rulings damaging to her position in the litigation. Litigation was begun, but the retainer agreement was never filed with the court. During the course of the litigation undertaken by Mr. McKenzie, some modest gains were obtained for the defendant. As is often the case in such matters, the volume of litigation was great in the face of strong opposition. In addition, as is also often the case, the contentiousness of the parties outside of court resulted in considerable extra work for counsel. During the course of the litigation, Mr. McKenzie sought and was awarded interim counsel fees. Two other Judges granted counsel fees totaling $25,000. Over time, only a portion of those fees was paid.
By this motion Mr. McKenzie now seeks to have the plaintiff pay for additional services rendered to the defendant in the sum of $55,430.30. In addition to their more general opposition to the motion, both the plaintiff and the defendant contend that the written retainer agreement signed by the defendant and Mr. McKenzie did not comply with the rules governing written retainer agreements in domestic relations matters as set forth in 22 NYCRR 1400.3 because it failed to include *162 pertinent language required to be included in such agreements by that section of the law. Additionally, the parties point out that Mr. McKenzie did not file the written retainer agreement with the court as is required by the same section.[1]
The provision in question, 22 NYCRR 1400.3, states that:
"[a]n attorney who undertakes to represent a party and enters into an arrangement for, charges or collects any fee from a client shall execute a written agreement with the client setting forth in plain language the terms of compensation and the nature of services to be rendered * * * The agreement shall contain the following information * * *
"1. Names and addresses of the parties entering into the agreement;
"2. Nature of the services to be rendered;
”3. Amount of the advance retainer, if any, and what it is intended to cover;
"4. Circumstances under which any portion of the advance retainer may be refunded. Should the attorney withdraw from the case or be discharged prior to the depletion of the advance retainer, the written retainer agreement shall provide how the attorney’s fees and expenses are to be determined, and the remainder of the advance retainer shall be refunded to the client;
"5. Client’s right to cancel the agreement at any time; how the attorney’s fee will be determined and paid should the client discharge the attorney at any time during the course of the representation;
"6. How the attorney will be paid through the conclusion of the case after the retainer is depleted; whether the client may be asked to pay another lump sum;
"7. Hourly rate of each person whose time may be charged to the client; any out-of-pocket disbursements for which the client will be required to reimburse the attorney. Any changes in such rates or fees shall be incorporated into a written agreement constituting an amendment to the original agreement, which must be signed by the client before it may take effect;
"8. Any clause providing for a fee in addition to the agreed-upon rate, such as a reasonable minimum fee clause, must be defined in plain language and set forth the circumstances *163 under which such fee may be incurred and how it will be calculated.
"9. Frequency of itemized billing, which shall be at least every 60 days; the client may not be charged for time spent in discussion of the bills received;
"10. Client’s right to be provided with copies of correspondence and documents relating to the case, and to be kept apprised of the status of the case;
"11. Whether and under what circumstances the attorney might seek a security interest from the client, which can be obtained only upon court approval and on notice to the adversary;
"12. Under what circumstances the attorney might seek to withdraw from the case for nonpayment of fees, and the attorney’s right to seek a charging lien from the court.
"13. Should a dispute arise concerning the attorney’s fee, the client may seek arbitration, which is binding upon both attorney and client; the attorney shall provide information concerning fee arbitration in the event of such dispute or upon the client’s request.”
The agreement in this case included some of the items required by that rule. Some of the items specified in the rule, such as those pertaining to advance retainers, did not apply here and need not have been included in this agreement. Nevertheless, other items, specifically items 5 and 10 through 13, which were applicable to these parties, were not included in the agreement.
The plaintiff and the defendant claim that, according to Code of Professional Responsibility DR 2-106 (C) (2) (B) (22 NYCRR 1200.11 [c] [2] [ii]), by failing to include these phrases in the agreement, the fees now sought by Mr. McKenzie may not be charged or collected. DR 2-106 (C) (2) (B) provides that:
"[a] lawyer shall not enter into an arrangement for, charge or collect * * *
"2. Any fee in a domestic relations matter to which Part 1400 of the joint rules of the Appellate Division is applicable * * *
"(B) Unless a written retainer agreement is signed by the lawyer and client setting forth in plain language the nature of the relationship and the details of the fee arrangement”.
While some of the language of this provision is regrettably general, it is nonetheless evident that the written retainer agreement referred to in DR 2-106 (C) (2) (B) is the same as *164 described in 22 NYCRR 1400.3. To begin with, the language of the two sections is remarkably similar. Clearly, the phrase "setting forth in plain language the nature of the relationship and the details of the fee arrangement” as used in DR 2-106 (C) (2) (B) has the same essential meaning as the phrase "setting forth in plain language the terms of compensation and the nature of services to be rendered” found in 22 NYCRR 1400.3. Surely the "details of the fee arrangement” can only refer to the terms of compensation, and the expression "the nature of the relationship”, while perhaps an unfortunate choice of language, in this context must be read to refer only to the nature of the legal services to be rendered and no other relationship. In addition, the phrase "in a domestic relations matter to which Part 1400 of the joint rules of the Appellate Division is applicable”, as used in DR 2-106 (C) (2) (B) (22 NYCRR 1200.11 [c] [2] [ii]), further indicates that the written retainer agreement referred to in DR 2-106 (C) (2) (B) (22 NYCRR 1200.11 [c] [2] [ii]) is the one described in 22 NYCRR 1400.3. Finally, the matter is made more certain by the recognition that the only kind of retainer agreement possible in a domestic relations matter is the very one described in 22 NYCRR 1400.3, and that DR 2-106 (C) (2) (B) (22 NYCRR 1200.11 [c] [2] [ii]), therefore, refers to no other kind of agreement.[2] Finally, one cannot fail to acknowledge the history of these provisions and the fact that they were designed to eliminate some longstanding abuses pertaining to the retention of counsel in matrimonial cases. That historical imperative also forces the conclusion that these provisions must be read to prevent collection of the fees in matrimonial actions where there has been a failure to comply with the provisions of 22 NYCRR 1400.3 (see, Forbes v Forbes, NYLJ, Feb. 26, 1997, at 26, col 1 [Sup Ct, NY County]; K.E.C. v C.A.C., NYLJ, June 11, 1997, at 32, col 2 [Sup Ct, Kings County]).
I feel compelled to note that this decision denying fees to counsel in this case is troubling to me. It is evident that the movant acted in good faith, did substantial work for his client and obtained such favorable results as were available under the circumstances. Nonetheless, the command of the statute is clear. The failure to comply with the provisions of 22 NYCRR 1400.3 regulating the contents of a retainer agreement ef *165 fectively prevents an attorney from collecting fees in any domestic relations matter.
The motion must therefore be denied.

. It should be noted that at the time of counsel’s earlier application for fees these claims in opposition were not made and the failure to file the retainer agreement was never brought to the attention of the court.

. It is for that reason that DR 2-106 (C) (2) (B) (22 NYCRR 1200.11 [c] [2] [ii]) should have adopted the identical language used in 22 NYCRR 1400.3. Its failure to do so is, at first blush, misleading and therefore regrettable.